CLARA R. SMIT, ESQ.
ATTORNEY AT LAW
100 HORIZON CENTER BLVD
HAMILTON, NJ 08691
(732) 843-6600
ATTORNEY FOR THE PLAINTIFF

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEANETTE & JOSE CORDERO,** | : |
| | : |
| **Plaintiffs,** | : |
| V. | : CIVIL ACTION NO.: |
| | : |
| **SOUTH JERSEY GASTROENTEROLOGY** | : |
| **& THE ENDOCENTER AT VOORHEES** | : COMPLAINT AND JURY DEMAND |
| | : |
| | : |
| **Defendants.** | : |
| | : |

The Plaintiffs, Jeanette and Jose Cordero, residing at 6225 Passmore Ave, City of Hammonton, County of Atlantic, State of New Jersey, file this Complaint, and would respectfully show the Court as follows:

### NATURE OF CASE

1. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., establishing the most important civil rights for persons

with disabilities in our country's history. This action is brought by the plaintiffs, Jeanette & Jose Cordero, against defendants' medical center, in their failure to provide reasonable accommodations for the plaintiffs' disability and for discrimination based on disability during plaintiff Jose Cordero's care while in defendants' medical center. The plaintiffs experienced humiliation and discrimination in violation of their civil rights through Defendants' policies and practices of discrimination on the basis of disability.

2. This action claims that defendants violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., hereafter NJLAD, the ADA, and Section 504 of the Rehabilitation Act, as well as other state and common law causes of action. In this action, Plaintiffs suffered damages and now seek declaratory and injunctive relief, and compensatory and punitive damages.

## JURISDICTION AND VENUE

3. Jurisdiction of this court is invoked pursuant to N.J.S.A. 10:-5-1 et. seq, the Americans with Disabilities Act, Title III, 28 USCS Section 12181 et seq and the Rehabilitation Act, 29 USCS Section 794, Section 504. This suit is authorized and instituted pursuant to the exercise of the police power of the State for the protection of the public safety, health, and morals and to promote the general welfare and fulfillment of the provision to the Constitution of the State of New Jersey and the United States of America guaranteeing civil rights.

## PARTIES

4. Jeanette and Jose Cordero are residents of the City of Hammonton, County of Atlantic and State of New Jersey. Plaintiffs, Jeanette and Jose Cordero, are profoundly deaf and communicate through American Sign Language. They require qualified American Sign Language interpreters, reasonable accommodations/modifications and other auxiliary aids and services to communicate effectively with Defendants and to benefit from Defendants' services.

Plaintiffs are qualified persons with a disability pursuant to Section 504, the ADA and NJLAD.

5. Defendant, South Jersey Gastroenterology, which has multiple office addresses, is located at 111 Vine Street, City of Hammonton, County of Atlantic and State of New Jersey. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, it is subject to the requirements of both the ADA and Section 504.

6. Defendant, The Endocenter at Voorhees, is located at 93 Cooper Road #100, City of Voorhees, County of Camden and State of New Jersey. It is a public entity under the ADA and is a recipient of federal financial assistance. Thus, it is subject to the requirements of both the ADA and Section 504.

## FACTS

7. One of the most important parts of the Americans with Disabilities Act is Title III, known as the "Public Accommodations and Services Operated by Private Entities". 42 U.S.C. Section 12181 et seq.

8. The New Jersey Law Against Discrimination specifically prohibits discrimination based upon disability under 10:5-12.

9. Section 504 of the Rehabilitation Act of 1973, provides that "No otherwise qualified individual with a disability" shall be "excluded, denied or discriminated against" by any facility receiving "federal financial assistance".

10. Defendant provides public accommodations within the meaning provided in each of the above laws.

11. As relevant to the present action, discrimination includes a failure to provide appropriate and reasonable auxiliary aids to plaintiffs who have a hearing loss to ensure effective communication. 28 C.F.R. Section 36.303(c).

12. Among these aids include a failure to provide interpreters to plaintiffs for the care of the plaintiff Jose Cordero. These aids were requested and denied by

the defendants during Cordero's numerous appointments and procedures beginning in October 2016 and on all occasions prior and thereafter.

13. Plaintiff Jose Cordero was a patient of Dr. Alan Tulman's at South Jersey Gastroenterology after being referred by his primary physician from October 2016 until November 2017. During this time plaintiff had an initial appointment and also numerous follow up appointments.

14. Plaintiff was also a patient of Dr. Alan Tulman's at The Endocenter at Voorhees from December 2016 until November 2017. During this time Plaintiff had at least 3 procedures performed.

15. On October 5, 2016 plaintiff arrived at South Jersey Gastoenterology for a consult that was referred by his primary physician for a routine colonoscopy. At this appointment, an interpreter was present after plaintiffs had requested same. Plaintiff was told that he would need surgery to remove polyps to check for colon cancer and agreed to surgery, again requesting that an interpreter be present.The surgery was scheduled for November 17, 2016 at the Endocenter at Voorhees. . A few days before the surgery was supposed to take place, the office called and canceled without explanation. The surgery was rescheduled for December 22, 2016. Plaintiffs Jose and Jeanette Cordero arrived at Defendant The Endocenter at Voorhees office before the prescheduled surgery. At the reception desk they were told that the interpreter that was supposed to be there was cancelled by Defendant since Jeanette was there to interpret..  However, Jeanette, like her husband, is also deaf and would require a sign language interpreter to communicate, so she in no way could be an interpreter for her husband. In addition, she was concerned about her husband's surgery and was in no state of mind to be acting as an interpreter between herself, her husband, and the medical staff, However, they went ahead with the surgery without any effective communication as Jose Cordero's wellbeing depended on it.

16. On January 25, 2017, plaintiffs returned to South Jersey Gastroenterology for a routine follow up. They were informed that an interpreter was not being provided since the office staff forgot to call for one.

17. Thereafter on the dates June 9, 2017 and June 30, 2017, two more colonoscopies were performed at The Endocenter at Voorhees. An interpreter was not present at either of these procedures.

18. Finally, plaintiff Jose Cordero was scheduled for yet another colonoscopy on November 3, 2017 at The Endocenter at Voorhees. Plaintiffs requested an interpreter in advance of this appointment, just as they had for all previous appointments. When they arrived for the colonoscopy the office staff had not called an interpreter and instead wanted plaintiff Jeanette Cordero to interpret as they had tried to force her to do in the past. Defendants indicated they did not understand why Jeanette Cordero, who is herself deaf, could not interpret for her deaf husband. The staff at The Endocenter at Voorhees claimed that they assumed the plaintiff Jeanette Cordero would interpreter at their facility because she had interpreted at South Jersey Gastroenterology during previous appointments when an interpreter had not been provided. The situation escalated to where an office manager became involved. However, it was too late, and plaintiffs left, feeling frustrated, angry and scared about Mr. Cordero's health, as he was supposed to have this colonoscopy to check for life-threatening illness such as cancer. The Corderos did not feel as though they could stay for the procedure however, since in the past after having these procedures, they could never understand the results or prognosis as there was no effective communication provided. Thus they were forced to leave without Jose ever having the procedure performed.

19. Throughout plaintiff Jose Cordero's stay he was seen by various nurses, doctors and staff without the utilization of an interpreter despite plaintiffs repeated requests resulting in ineffective communication. Without an interpreter being provided to them, plaintiffs were unable to communicate effectively during

critical aspects of his treatment. This led to plaintiffs not having a complete understanding of what took place during his medical treatment as well as being unable to participate in and ask questions about his medical treatment, diagnosis, prognosis all due to no interpreter being provided by defendant throughout his many appointments and procedures. This also led plaintiffs to feeling frustrated, scared and upset about the lack of communication during his procedures. All requests by plaintiffs for a live sign language interpreter went ignored by defendants. This lack of communication left plaintiffs feeling frustrated and upset as well as this left the plaintiffs feeling frightened and scared as they struggled to understand about the medical treatment Plaintiff Jose Cordero received at defendants medical center during his numerous procedures and appointments.

20. Plaintiffs were ignored, humiliated and treated like non-persons by defendants. Defendants' actions resulted in plaintiffs being irretrievably denied the complete understanding of the care received while at the Medical Facilities. Instead plaintiffs experienced shame, anxiety, frustration, emotional distress, fear and discrimination. Further, Jose Cordero's care was made more difficult and painful by his inability to communicate with the nursing staff and doctors in a manner in which he could understand.

21. During the plaintiff's admission to defendants' offices he was requested to sign consent forms and other forms involving procedures without an interpreter present. Plaintiffs did not fully understand what treatment was to be performed on him and was often unaware of his diagnosis, prognosis and was unable to fully understand what treatment was to be performed on him.

22. Each and all of the above acts, both of omission and commission, were intentional acts of discrimination and each and all were a proximate cause of the damages suffered by plaintiff. Plaintiffs will require the services of defendant's facilities in the future as these are the closest facilities for plaintiffs medical concerns to plaintiffs home, and based upon defendants' ongoing pattern of

discrimination will once again be denied reasonable accommodation for their disability.

23. Defendants' willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act and caused plaintiff to suffer and continue to suffer mental pain and anguish.

## CLAIMS

24. Plaintiffs reallege and incorporate by reference the allegations of fact contained in the previous paragraphs.

## FIRST COUNT
## DEFENDANTS VIOLATED TITLE III OF THE AMERICANS WITH DISABILITIES ACT

25. Plaintiffs hearing loss substantially limits their major life activities, including their ability to effectively communicate. Therefore, Plaintiffs are individuals with a disability under Title III of the ADA. Plaintiffs meet the essential eligibility requirements for Defendants' programs, services, and activities at all times material hereto. Thus, Plaintiffs are qualified individuals with a disability and are entitled to the protections of the ADA under 29 USCS Section 794, et seq.

26. Defendants violated Title III of the ADA in numerous ways, including discriminatory actions which occurred when they:

(a) Failed to maintain policies and procedures to ensure compliance with Title III of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities;

(b) Failed to ensure that communications with Plaintiffs were as effective as communications with non-disabled patients;

(c) Failed to provide auxiliary aids and services, including qualified interpreters, and to modify policies and procedures to prevent discrimination against Plaintiffs;

(d) Failed to establish effective self-evaluations and/or provide notice of Plaintiff's rights as individuals with a disability under the ADA;

(e) Failed to train staff on how to utilize the video remote interpreting system; and

(f) Excluded Plaintiffs from services of the public entity and denied Plaintiffs the benefit of these services due to their disability.

23. Plaintiffs suffered severe emotional distress and damages in the past, and continue to suffer emotional distress and damages due to Defendants' violations of Title III of the ADA.

## SECOND COUNT
## DEFENDANTS VIOLATED SECTION 504 OF THE REHABILITATION ACT OF 1973

27. Plaintiffs are deaf and their disability substantially limits their major life activities, including their ability to effectively communicate with others who do not know sign language. Therefore, Plaintiffs are considered to be individuals with disabilities under Section 504, as amended, See 29 U.S.C. §706(8). Plaintiffs are otherwise qualified under Section 504 because they meet the essential eligibility requirements for Defendants' services at all times material hereto. Defendants are also recipients of federal financial assistance.

28. Defendants' policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiff's rights under Section 504 by discriminating on the basis of disability.

29. Additionally, Defendants also denied Plaintiffs services which it made available to non-disabled patients.

30. Defendants violated Plaintiff's rights through repeated refusals to reasonably accommodate Plaintiffs with appropriate auxiliary aids and services or to modify policies and procedures to prevent discrimination.

31. Plaintiffs suffered severe emotional distress and damages in the past, and continues to suffer distress and damages due to Defendants' violations of Section 504.

### THIRD COUNT
### DEFENDANTS VIOLATED THE NEW JERSEY LAW AGAINST DISCRIMINATION

32. Defendants' conduct is in violation of the N.J.S.A. 10:5-1, et seq., N.J.S.A. 34:1-69.10 et seq.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendants, jointly and severally for the following:

33. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act, Title III of the Americans with Disabilities Act, and the New Jersey Law Against Discrimination.

34. Permanently enjoin Defendants from any practice, policy and/or procedure which will deny Plaintiffs equal access to, and benefit from Defendants services or which deny Plaintiffs communication with Defendants. Enter a permanent injunction ordering Defendants:

  A. To cease discrimination against Plaintiffs and other deaf or hard of hearing patients;

    B.     To promulgate and comply with policies and procedures to ensure that Defendants and its staff do not discriminate against individuals who are deaf and hard of hearing;

    C.     To promulgate and comply with procedures to ensure that Defendants will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by Defendants;

    D.     To promulgate and comply with procedures to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, Videophones, and other communication services to ensure effective communication with and for deaf or hard of hearing persons.

35. Award compensatory and punitive damages;

36. Award reasonable costs and attorneys' fees; and

37. Award any and all other relief that may be necessary and appropriate.

## JURY DEMAND

38. Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Respectfully submitted,

      /s/ Clara R. Smit
CLARA R. SMIT, ESQ.
Attorney for Plaintiff

Dated: May 24, 2018

## **CERTIFICATION**

Pursuant to Rule 4:5-1, I, Clara R. Smit, certify that I am a member of the firm of Clara R. Smit, attorney for the Plaintiff stated herein. To my information and belief, the matter in controversy is not the subject of any other action pending in any other Court, or of a pending arbitration proceeding and no other action or arbitration proceeding is being contemplated. At this time, the Plaintiffs know of no other party who should be joined in this action.

/s/ Clara R. Smit
Clara R. Smit, Esq.
Attorney for Plaintiff

Dated: May 24, 2018